CITIZENS AGAINST the LEWIS AND CLARK (MOWERY) LANDFILL, Appellants,

v.

POTTAWATTAMIE COUNTY BOARD OF ADJUSTMENT and Donald T. Steege, Zoning Administrator, and Community Refuse Disposal, Inc., Appellees.

George A. BARTA and Lesley (Chick) William Hale, Appellants,

v.

POTTAWATTAMIE COUNTY BOARD OF ADJUSTMENT and Donald T. Steege, Zoning Administrator, Appellees.

Nos. 61293, 61325.

Supreme Court of Iowa.

April 25, 1979.

Dennis J. Mahr of Mahr & Mahr, Sioux City, for appellant Citizens.

A. John Wabaunsee, Boulder, Colo., for appellants Barta and Hale.

James S. Heckerman, Asst. Pottawattamie County Atty., Council Bluffs, for appellees Board and Administrator.

Peter J. Peters and Dennis M. Gray, Council Bluffs, for appellee Community Refuse Disposal, Inc.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, McGIVERIN and LARSON, JJ.

LeGRAND, Justice.

In these consolidated cases, plaintiffs appeal from a decree upholding grant of a conditional use permit by the Pottawattamie Board of Adjustment for the operation of a sanitary landfill in that county. We reverse.

This is another in a line of zoning cases dealing with sanitary landfills. Although plaintiffs recognize the necessity for such facilities, they, like everyone else, do not want one near *their* property. Such cases usually engender bitterness and acrimony. This one is no exception.

The Pottawattamie County Board of Adjustment (hereafter called board) was established by ordinance pursuant to chapter 358A, The Code. The board's authority includes the power to grant conditional use permits under certain specified conditions. On March 14, 1977, an application was filed with the administrative officer of the board for a conditional use under the Pottawattamie County Zoning Ordinance, asking permission on behalf of Community Refuse Disposal, Inc., to operate a privately owned sanitary landfill.

Notice of hearing on the application was given to the property owners within 200 feet of the exterior boundaries of the property for which the special use was requested. On April 8, 1977, the board held its public hearing with all members present. At the conclusion of that hearing, the presiding officer announced to those present that a meeting would be held on May 10, 1977, at which time the board would render its decision on the application. On that date the board met, stated that no additional testimony would be taken, that the board had reviewed the application and was prepared to make a decision. On a three-to-two vote, the board approved the application, subject to five conditions.

Plaintiffs then filed petitions for writs of certiorari to review the board's action, pursuant to § 358A.18, The Code, 1977. The trial court affirmed the board, and these consolidated appeals followed.

I. Plaintiffs' appeal raises many procedural questions. We find it necessary to consider only one because we deem it dispositive of the appeal. We hold the failure of the board to adopt rules as directed by both the statute (§ 358A.12) and the ordinance (§ 61) invalidates the grant of the permit, and we accordingly reverse the judgment of the trial court.

▇▇▇ The trial court did not squarely face this question, holding instead that plaintiffs had waived any right to object by not raising that issue before the board. In its ruling the trial court relied on *Johnson v. Board of Adjustment, City of West Des Moines,* 239 N.W.2d 873 (Iowa 1976). We do not believe *Johnson* goes that far. Plaintiffs cannot be said to have waived objection to the board's disregard of its obligation to adopt rules simply by not calling that fact to the board's attention. Defendants' duty to enact rules under the statute (and the ordinance) is not the subject of waiver, even though rules, once adopted, may be. We hold plaintiffs may rely on that principle here. We therefore consider the effect of the board's failure to adopt rules.

We do not place our decision on constitutional rules of due process, but rather on statutory provisions (including the ordinance) and basic considerations of fairness.

It is important to note we are concerned with *procedural* rules, not those fixing *substantive* standards by which the board must decide whether to issue or deny applications for conditional use permits. We have already held this very ordinance provides "reasonably adequate standards for [the] guidance of the board in acting upon conditional use application[s]." *Schultz v. Board of Adjustment,* 258 Iowa 804, 811, 139 N.W.2d 448, 451 (1966). That opinion did not touch upon the necessity for rules governing the operating procedure to be followed, a matter the parties agree has yet to be decided by this court.

On this question the courts are not in agreement. There is authority that failure to adopt procedural rules is not fatal to agency action if the parties have been afforded a fair hearing and if no prejudice is shown. *United States v. Griglio,* 467 F.2d 572 (1st Cir. 1972); *Sundeen v. Rogers,* 83 N.H. 253, 141 A. 142 (1928); 2 Am.Jur.2d *Administrative Law* § 195, at 27–28 (1962).

However, the weight of authority is to the contrary. Commentators condemn the failure to adopt procedural rules, whether demanded by statute or not. E. Sullivan, *Araby Revisited: The Evolving Concept of Procedural Due Process Before Land Use Regulatory Bodies,* 15 Santa Clara Law. 50, 54–57 (1974); *The Rights of Parties Before Zoning Authorities,* XLI Miss.L.J. 271 (1970); *Judicial Control Over Zoning Boards of Appeal: Suggestions for Reform,* 12 U.C.L.A. L.Rev. 937, 945–51 (1965); *Informality Breeds Contempt: Board of Zoning Appeals Procedure,* 16 Syracuse L.Rev. 568, 580–81 (1965).

There is also substantial case support for such a view. We mention a few of the opinions, some of which deal with mixed substantive and procedural problems but which nevertheless generally reflect the necessity for *some* rules to govern the conduct of proceedings before the particular agency involved.

In *Adams v. Professional Practices Comm'n.*, 524 P.2d 932, 934 (Okl.1974), the court said: "Proper administrative procedure requires that the rights of parties and the procedure of the agency on hearings be made the subject of agency regulations so that the parties may be advised of their rights."

In *Mazza v. Cavicchia*, 15 N.J. 498, 105 A.2d 545, 552 (1954), the court said this:

We are told that such permission [to file a brief and present oral argument] is granted on request and in fact was granted here. Proper administrative procedure requires that such rights and agency procedure generally [shall] be the subject of agency regulation so that a licensee may know of his rights. The need for the publication of such regulations is clearly stated in the final report of the Attorney General's Committee on Administrative Procedure (1941) which unanimously recognized that: "An important and far-reaching defect in the field of administrative law has been a simple lack of adequate public information concerning its substance and procedure. * * * To all but a few specialists, such a situation leads to a feeling of frustration. Laymen and lawyers alike, accustomed to the traditional processes of legislation and adjudication, are baffled by a lack of published information to which they can turn when confronted with an administrative problem."

In *White v. Roughton*, 530 F.2d 750, 754 (7th Cir. 1976), the court held the absence of written standards deprived plaintiff an opportunity to establish a basis for relief payments.

In *Sun Ray Drive-in Dairy, Inc. v. Oregon Liquor Control Comm'n.*, 16 Or.App. 63, 517 P.2d 289, 293 (1973), (an Administrative Procedures Act case), the court said:

Unwritten standards and policies are no better than no standards and policies at all. Without written published standards the entire system of administrative law loses its keystone. The ramifications affect every party and every procedure involved in the fulfillment of the agency's responsibility under the law, e. g., the public, the applicant, agency personnel, the participants in the hearing, the commission, the legislature, and the judiciary.

Although not applicable here, the case of *Ehrenberg v. Persons*, 8 A.D.2d 18, 185 N.Y. S.2d 369 (Sup.Ct.App.Div.1959), demonstrates the vice of not having procedural rules. In that case a zoning ordinance provided (as does the Pottawattamie County Zoning Ordinance) that appeals to the zoning board should be taken within such time as *prescribed by the board of appeals* (or board of adjustment.) No such rule was adopted. The board dismissed an appeal because it was not taken "within a reasonable time." On appeal the appellate court reversed, saying that failure to adopt a rule deprived the board of any authority to decide on a case-by-case basis whether an appeal had been timely taken.

■ The importance of having administrative agencies adopt and publish rules has been emphasized in recent years by the adoption of administrative procedure acts in many states, including Iowa. The Iowa Administrative Procedure Act (ch. 17A, The Code) does not apply to county zoning boards. However, its provisions concerning rules are significant on the matter before us. It sets up requirements for the adoption of agency rules of practice "setting forth the nature and requirements of all formal and informal procedures available to the public." It provides for publication of the rules adopted. It provides that no rule shall be effective until it has been available for public inspection as required by the rule. It provides means by which interested persons may submit views and arguments concerning proposed rules. *See* §§ 17A.3, 17A.4, The Code. In view of the careful safeguards set up in the adoption of the Administrative Procedure Act, we find it difficult to permit other governmental agencies, even though not covered by that statute, to operate with *no* rules and without established procedural guidelines. We hold that the failure to adopt rules as mandated by both the statute and the ordinance invalidates the board action.

In view of this finding, it is unnecessary to rule on the specific objections raised by plaintiffs concerning the manner in which this hearing was conducted. However, we believe the question concerning the board's duty to make written findings merits discussion. There is no statutory requirement that the board do so. *See Weldon v. Zoning Board of City of Des Moines*, 250 N.W.2d 396, 400–01 (Iowa 1977); *Deardorf v. Board of Adjustment of Plan. & Zon. Comm'n.*, 254 Iowa 380, 385, 118 N.W.2d 78, 81 (1962); *Anderson v. Jester*, 206 Iowa 452, 460–61, 221 N.W. 354, 358 (1928). However, there is no doubt such findings would be of great benefit, both to the trial court and to this court on certiorari or appeal from the board's decisions. They would provide a ready basis for determining the reasons for the board's action and would help immeasurably in determining whether the result was reasonable or was, as is frequently claimed, arbitrary and capricious. It would also serve the additional purpose of sharpening the issues the parties should raise on appeal. *See Erb v. Iowa State Board of Public Instruction*, 216 N.W.2d 339, 342 (Iowa 1974).

We have not applied the *Erb* rationale to board of adjustment cases, but we believe it is now time to do so. In reaching this conclusion, we rely strongly on the following statement in K. Davis, *Administrative Law Treatise* § 16.05 (2d ed. 1978):

The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction.

*See also* E. McQuillin, 8A *Municipal Corporations* § 25.272 (3rd ed. 1976).

These are compelling considerations which have persuaded us to adopt the rule that boards of adjustment shall make written findings of fact on all issues presented in any adjudicatory proceeding. Such findings must be sufficient to enable a reviewing court to determine with reasonable certainty the factual basis and legal principles upon which the board acted. This rule shall apply to board of adjustment proceedings after the date this opinion is filed.

II. There remains one additional issue concerning plaintiffs' standing to sue, about which the trial court expressed doubt but did not decide. We quote from the judgment entry:

At the conclusion of the submission of this case the Court made inquiry of counsel for all parties as to the standing to sue of the plaintiffs in each of these captioned [consolidated] cases. . . . [T]his Court has serious questions as to whether plaintiffs in either case have sufficient standing to petition the Court for certiorari. In [the case brought by Citizens against Lewis and Clark Landfill] the petition recites . . . that the "plaintiffs" fall into certain categories . . . *However, there is nothing before the Court at this time to indicate the nature of the organization who identifies itself as the plaintiff.* . . . The Court seriously questions whether the plaintiff in said cause is a "person or persons aggrieved" as required by Section 358A.18, 1977 Code. It appears that cases from other jurisdictions have found adversely to the plaintiffs on the issue of standing to sue as seen by *Norwood Heights Improvement Association [Windsor Hills Improvement Association, Inc.] v. Mayor and City Council of Baltimore*, 72 [73] Atlantic 2d 531, 195 Maryland 383, 82 Am.Jur.2d 344, page 935.

As to the plaintiffs [Barta and Hale in the other case], they are members of the Yankton-Sioux Tribe residing in Sioux City, Iowa or of the Pottawattamie Tribe, residing in Horton, Kansas. Therefore, they are not "taxpayers" but they claim the right to petition for writ of certiorari based upon religious and ancestral rights to protect what might be grave sites on

the proposed site. . . . The Court . . . remains in serious doubt that the plaintiffs as identified by the pleadings have any standing in these cases. However, the Court will not make its determination of this case based upon the issue of standing to sue. . . . [but will] dispose of the issues [on the merits] based on the law of Iowa. . . . (Emphasis Supplied.)

■ As the trial court clearly states, lack of standing was not relied on in ruling against plaintiffs. On this appeal defendants assert lack of standing as an additional ground for sustaining the trial court in the event we find for plaintiffs on the other issues. Plaintiffs, on the other hand, say defendants have waived any right to do so because they did not cross-appeal. Our cases say that one for whom a favorable judgment was rendered may, on appeal and without a cross-appeal, attempt to save the judgment by urging any ground asserted in the trial court. *Ashby v. Haugh,* 260 Iowa 1047, 1054, 152 N.W.2d 228, 232 (1967); *cert. denied,* 389 U.S. 1056, 88 S.Ct. 809, 19 L.Ed.2d 855 (1968); *Lautenbach v. Meredith,* 240 Iowa 166, 173, 35 N.W.2d 870, 874 (1949); *Wentland v. Stewart,* 236 Iowa 258, 261, 18 N.W.2d 305, 306 (1945). We therefore hold defendants may urge lack of standing, and we consider this claim on its merits.

We deal just with the standing of plaintiffs designated as Citizens Against Lewis and Clark (Mowery) Landfill. The statute determinative of plaintiffs' status is § 358A.18, The Code, which we set out in part:

> Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment under the provisions of this chapter, or any taxpayer, . ., may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality.
> . . .

Plaintiffs must bring themselves within the terms of this section if they are to have standing to sue. The trial court held they did not do so because there was nothing "to indicate the nature of the organization" designated as plaintiff. This, of course, is true; but it is important only if, as the trial court found, the *organization* (Citizens Against Lewis and Clark (Mowery) Landfill) is the real plaintiff. We do not believe it is.

Admittedly this comes to us under unusual conditions. The caption, which is the only place the "organization" is named, was, perhaps, improvident, but it does not prevail over all other circumstances—including the petition itself—which serve to establish irrefutably who the *actual* plaintiffs are.

The petition was signed and sworn to by sixty-nine persons. The petition referred to the "undersigned plaintiffs" and described their varying interests in the controversy. Throughout the petition (except on one occasion) the plural form "plaintiffs" was used. Obviously this would be incorrect if it referred to an organization. Indeed, there is no mention of an organization and, as far as this record goes, there was none. The form of the caption is merely descriptive of the parties who brought the suit. It describes, rather than names, the plaintiffs. The plaintiffs were those who signed and verified the petition, and this is clear beyond doubt. Furthermore, this appears to have been conceded until the trial court injected the question of standing. Even though the trial court held the issue was raised by answer (a matter of some doubt which we do not decide), standing was not seriously questioned at any time.

■ Taking into account the entire petition, including the caption, it is apparent the actual plaintiffs are the sixty-nine persons who signed and swore to the petition. We do not understand that defendants make any challenge to the standing of these sixty-nine as individuals, only as members of an "organization." No doubt this whole matter could have been cleared up by motion. While this short-cut designation in the caption was perhaps ill-advised and certainly is not recommended practice, we decline to say it alone is determinative of

standing. In the absence of motion and limited to these particular and peculiar facts, we hold the parties who signed and swore to the petition and who are referred to therein as the plaintiffs are the parties actually "presenting a petition" to the district court and that they have standing to do so.

III. In view of our holding in Divisions I and II, any decision concerning the standing of plaintiffs Barta and Hale in the second of the consolidated cases would not change the result, and we therefore do not consider it.

IV. The judgment is reversed and the cause is remanded for entry of judgment setting aside the board's decision granting the intervenor, Community Refuse Disposal, Inc., the right to operate a sanitary landfill.

REVERSED and REMANDED.