# IN THE COURT OF APPEALS OF IOWA

No. 19-0349
Filed April 15, 2020

JAMES W. PALENSKY and TERESA A. SCHEIB-PALENSKY, as Trustees of the PALENSKY 1998 TRUST dated February 25, 1998,
    Petitioners-Appellees,

vs.

STORY COUNTY BOARD OF ADJUSTMENT,
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Story County, Bethany J. Currie, Judge.

A county board of adjustment appeals a district court decision reversing and remanding its grant of a conditional use permit for want of written findings. **AFFIRMED.**

Hugh J. Cain, Brent L. Hinders, and Eric M. Updegraff of Hopkins & Huebner, P.C., Des Moines, for appellant.

Gregory G.T. Ervanian of Ervanian & Cacciatore, L.L.P., Des Moines, for appellees.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

The Story County Board of Adjustment (Board) appeals from the district court's decision, which sustained a writ and annulled the Board's proceedings following the issuance of a conditional use permit (CUP). As Story County's own zoning ordinances require written findings and binding case law precedent requires written findings or substantial compliance with the same, we affirm the district court's decision.

## I. Facts and Prior Proceedings

Bradley Perkins sought a CUP from the Board to develop a seventy-four acre plat in southwest Story County. Perkins named the project "Raspberry Hill Resort" and hoped it would attract business as a wedding venue. His permit request outlined plans to build an event venue for 300 persons and expand an existing dwelling into a small bed and breakfast.

Following a February 7, 2018 meeting of the Story County Planning and Zoning Commission, the matter was heard before the Board on February 21, 2018. A Story County planner made a presentation regarding Perkins's request, and comments were received from several community members and other individuals, including Perkins. James Palensky and Teresa Scheib-Palensky, as trustees of the Palensky 1998 Trust (collectively, the Palenskys), own land neighboring the plat at issue and opposed the issuance of the CUP. The Board members asked questions and ultimately approved the CUP by a vote of three to one. The CUP certificate was recorded with the Story County Recorder's office on February 27, 2018.

The Palenskys timely petitioned for issuance of a writ of certiorari under Iowa Code section 414.15 (2018), alleging that the issuance of the CUP was arbitrary, unreasonable, and illegal. Hearing on the petition was held on January 24, 2019. The district court first considered the Palenskys' argument that the Board failed to establish findings of facts, as required by Story County land development regulations. The district court found the Board's failure to make written findings to be dispositive, relying on Story County land regulation ordinances; *Citizens Against Lewis & Clark (Mowery) Landfill v. Pottawattamie County Bd. of Adjustment*, 277 N.W.2d 921, 925 (Iowa 1979); and *Bontrager Auto Serv., Inc. v. Iowa City Bd. of Adjustment*, 748 N.W.2d 483, 488 (Iowa 2008). The court sustained the writ, annulled the Board's proceedings, and remanded for written findings of fact. The Board's appeal followed. While the appeal was pending, Perkins filed a motion to dismiss the appeal on the ground that the district court's order was not a final judgment, and therefore, the Palenskys did not properly file for interlocutory relief.

## II. Scope and Standard of Review

We review a district court's order annulling board proceedings for correction of legal error. *Bontrager*, 748 N.W.2d at 494–95; *W & G McKinney Farms, L.P. v. Dallas County Bd. of Adjustment*, 674 N.W.2d 99, 103 (Iowa 2004). "The district court's factual findings are binding on appeal if they are supported by substantial evidence." *W & G McKinney Farms*, 674 N.W.2d at 103.

## III. Analysis

We begin by considering and rejecting Perkins's motion to dismiss. Perkins argues the district court's order annulling the board's proceedings and remanding

for findings of fact required the Palenskys to file for interlocutory relief.  We disagree.

> A final judgment or decision is one that finally adjudicates the rights of the parties, and it must put it beyond the power of the court which made it to place the parties in their original positions.  It is a determination which may be enforced by execution or in some similar manner.

*Crowe v. De Soto Consol. Sch. Dist.*, 66 N.W.2d 859, 860 (Iowa 1954).  "A ruling or order is interlocutory if it is not finally decisive of the case."  *Helland v. Yellow Freight Sys., Inc.*, 204 N.W.2d 601, 604 (Iowa 1973).  A remand for further proceedings is to be differentiated from a limited remand for further factfinding.  *See Reiter v. Iowa Dep't of Job Serv.*, 327 N.W.2d 763, 766–67 (Iowa Ct. App. 1982) (distinguishing between a limited remand and a remand for further proceedings); *compare* Iowa Code § 17A.19(7) (limited remand), *with* Iowa Code § 17A.19(10) (remand for further proceedings).  When a district court grants a writ of certiorari holding a zoning board's decision to be illegal and remanding for further proceedings before the board, the district court fully relinquishes jurisdiction.  *Sereda v. Zoning Bd. of Adjustment*, 641 N.W.2d 206, 208 (Iowa Ct. App. 2001) (citing *Bugely v. State*, 464 N.W.2d 878, 880 (Iowa 1991) ("[A]ll jurisdiction is lost in a remand for further proceedings, and a dissatisfied party can seek redress only by filing a new application, writ or appeal.").

Here, the district court gave a final adjudication of the parties' rights when it annulled the proceedings that granted Perkins a CUP.  The district court concluded its order by saying, "It is therefore ordered the Petitioners' Petition for Writ of Certiorari is sustained, that *the previous proceedings of the Board are annulled*, and this matter is remanded to the Board for creation of written findings of fact

regarding its decision to approve Perkins' CUP application." (Emphasis added). Perkins would have us interpret the district court's order as a limited remand because the court did not rule on the "substantive legality" of the CUP, but a court reviewing agency action "shall reverse, modify, or grant other appropriate relief from agency action" when prejudice results from either procedural or substantive error. *See* Iowa Code § 17A.19(10)(a)–(f). The annulment vacated the board's decision and determined the grant of the CUP to be illegal. Whether the dispositive illegality derived from a procedural or substantive defect is of no significance to the inquiry of finality.

While the district court did remand for "creation of written findings of fact regarding its decision to approve Perkins' CUP application," this instruction on how to proceed does not overcome the annulment of prior proceedings. As the board noted, "Currently, there is no effective decision from the Board of Adjustment concerning the Perkins CUP because the Iowa District Court annulled that decision."

Since the court annulled the Board's decision and relinquished jurisdiction over the case, its ruling was a final judgment. We therefore deny Perkins's motion to dismiss this appeal on the ground that the Palenskys were required to file for interlocutory relief.

We next turn to the merits of the arguments on appeal. The Board argues that the presentation by a county staff planner and comments from the public on various issues sufficed to satisfy the requirement of written findings of fact. The Palenskys argue the district court was correct in sustaining the writ and annulling the Board's proceedings given the Board's failure to make written findings of fact.

In 1979, the Iowa Supreme Court promulgated the requirement that "boards of adjustment shall make written findings of fact on all issues presented in any adjudicatory proceeding." *Citizens*, 277 N.W.2d at 925. The court later clarified that substantial compliance with the written-findings requirement will suffice and strict compliance is not required. *Bontrager*, 748 N.W.2d at 488. "[S]ubstantial compliance means the statute or rule has been followed sufficiently so as to carry out the intent for which it was adopted." *Id.* (altered for readability) (citation omitted). The intent of the written-findings requirement is "to enable a reviewing court to determine with reasonable certainty the factual basis and legal principles upon which the board acted." *Citizens*, 277 N.W.2d at 925. However, "proceedings before a board of supervisors and like tribunals are necessarily informal and courts are not disposed to review them with technical strictness." *Thorson v. Bd. of Supervisors*, 90 N.W.2d 730, 735 (Iowa 1958).

In addition to the requirements of *Bontrager* and *Citizens*, the Board's decision in this case is subject to Chapter 90 of the Code of Ordinances of Story County.[1] Section 90.04(1) provides that "[t]he Board of Adjustment shall review the proposed development for conformance to" six criteria: compatibility; transition; traffic; parking and loading; signs and lighting; and environmental protection. Story County, Iowa, Code of Ordinances § 90.04(1) (2020). Section 90.04 further provides that

---

[1] We observe that the parties' references to particular sections of the Story County Code of Ordinances are not in accord with the current numbering scheme of the code, and the parties did not include the 2017 ordinances in the record on appeal. Because none of the code provisions relevant and material to this appeal have been modified since the parties submitted briefs, we use the current numbering scheme.

> [i]f the Board of Adjustment concludes that all development criteria will be met by the development, it shall approve the application and plans unless it concludes, based on the information submitted with the official application materials and at the hearing that if completed as proposed there is a strong probability the development will:
>    A. Not adequately safeguard the health, safety and general welfare of persons residing or working in adjoining or surrounding property; or
>    B. Impair an adequate supply (including quality) of light and air to surrounding property; or
>    C. Unduly increase congestion in the roads, or the hazard from fire, flood or similar dangers; or
>    D. Diminish or impair established property values on adjoining or surrounding property; or
>    E. Not be in accord with the intent, purpose and spirit of the Ordinance or the Cornerstone to Capstone (C2C) Comprehensive Plan.

*Id.* § 90.04(2).

In reviewing the six affirmative criteria in section 90.04(1) and considering the five dangers in 90.04(2), the code provides that the Board "shall establish a finding of facts based upon information contained in the application, the staff report, and the Commission recommendation and presented at the Commission or Board of Adjustment hearings." *Id.* § 90.03(3)(G)(1)(a). We read the Story County Ordinance in concert with the dictate of *Citizens* and *Bontrager* that boards must substantially comply with a requirement of written findings. "Although we give deference to the board of adjustment's interpretation of its city's zoning ordinances, final construction and interpretation of zoning ordinances is a question of law for us to decide." *Lauridsen v. City of Okoboji Bd. of Adjustment*, 554 N.W.2d 541, 543 (Iowa 1996). Because Iowa cases create a requirement of substantial compliance with a written-findings requirement, we need not reach the question of whether the Story County ordinance alone requires written findings. We conclude

the Board was required under *Bontrager* and its own ordinances to substantially comply with a requirement of written findings.

In *Bontrager*, a provider of homeless shelter housing sought to build a new facility and thus sought a zoning exception for the proposed site, which was zoned for commercial use. 748 N.W.2d at 485. The Iowa City Board of Adjustment approved the exception and filed a "written decision granting the application" several days later. *Id.* The written decision explained the board's finding that the new homeless shelter "will not be detrimental overall to the public health, safety, comfort or general welfare"; however, it failed "to specifically find in its written decision that the proposed exception would not substantially diminish or impair property values in the neighborhood." *Id.* at 486, 489. The district court reversed, holding the shelter "had failed to present substantial evidence [that] the proposed special exception would not substantially diminish or impair property values in the neighborhood." *Id.* at 486. The Iowa Supreme Court held that by making a factual finding on one of the two contested issues, the board substantially complied with the *Citizens* requirement to make written factual findings. *Id.* at 489–90. Relevant to the present case, the *Bontrager* court noted multiple instances in which board members expressed their views or commented on the applicable standards. *Id.* at 489. Moreover, the board's written decision in *Bontrager*, although it omitted mention of a critical governing standard, still "contained findings of fact, conclusions of law, and a disposition." *Id.* at 489.

In the instant case, the Board made no findings of fact or conclusions of law in the CUP certificate, the minutes, or the meeting itself, as reflected in the

transcript.  In the "Certificate of Conditional Use Permit," the Board stipulated the following conditions on the award of the CUP:

> 1. All parking stall areas shall be clearly marked in order to meet the Story County Land Development Regulations [s]ection 88.08 that all parking spaces and circulation routes are well-defined and clearly marked.
> 2. The applicant shall provide dust control on 240th Street adjacent to existing and future dwellings if daily traffic counts to and from the subject property exceed 150 vehicles per day.  At any time, the Planning and Development Department may request the applicant to hire an engineer to study the traffic counts on 240th Street to and from the subject property.
> 3. A site plan meeting all requirements of the Story County Land Development Regulations shall be submitted for action by the Story County Board of Supervisors prior to the issuance of any Zoning Permits.

These conditions place limitations on the CUP that relate to the traffic, parking, and environmental protection criteria in section 90.04(1).  However, the imposition of conditions on an issued permit cannot be read to constitute "establish[ing] a finding of facts" as required by the ordinance, particularly where, as here, the imposed conditions are taken verbatim from a recommendation by the planning and zoning commission.  Likewise, while the transcript and minutes from the Board meeting reflect many of the board members' questions, neither the transcript nor the minutes contain findings of fact on the criteria set forth in section 90.04(1).  Members of the Board made several statements to the effect that the panel would "deliberate," but any deliberation was off the record or devoid of explicit findings.  A "finding of fact" is "[a] *determination* by a judge, jury, or administrative agency of a fact supported by the evidence in the record, usu[ally] presented at the trial or hearing." *Finding of Fact*, *Black's Law Dictionary* (11th ed. 2019) (emphasis added).  Since a question cannot constitute a determination, the

Board made no determinations by simply asking questions about the criteria set out in section 90.04.

We recently encouraged zoning boards "to undertake a more thorough examination of ordinance requirements in future proceedings." *Graziano v. Bd. of Adjustment of Des Moines*, No. 16-1753, 2017 WL 5185434, *1 (Iowa Ct. App. Nov. 8, 2017). In this unpublished case, the board issued a written decision five days after the meeting in which the board granted the requested exception, and in the written decision the board "adopt[ed] nearly verbatim *the rationale* provided in the written report of the city staff member." *Id.* at *3 (emphasis added). While we upheld the zoning exception in that case, we characterized the result as "a close call." *Id.* at *1. In contrast with *Graziano*'s "close call," the Raspberry Hill Resort CUP Certificate contained no written rationale and no other written decision was issued aside from the certificate, which contained only bare conditions unaccompanied by findings or reasoning.

The district court characterized three of our recent unpublished cases as expanding on *Bontrager*'s departure from the strict rule of *Citizens*, saying we have upheld board decisions "with no written findings whatsoever." While the district court disregarded these cases as nonbinding, we find it instructive to consider their holdings.

First, in *Condon Cabin, LLC v. Dickinson County Bd. of Adjustment*, No. 15-1345, 2016 WL 5484947, at *3 (Iowa Ct. App. Sept. 28, 2016), we found substantial compliance when the board made three written findings in its grant of a variance. Similar to the instant case, the plaintiff claimed the board of adjustment failed to make written findings as required by zoning ordinances. *Condon Cabin*, 2016 WL

5484947, at *1. However, in *Condon Cabin*, we noted "[t]he Board made findings on the issues required of them." *Id.* at *3. Handwritten on a form titled "Findings of the Board of Adjustment [:] Variance Application" were the following statements: "Approved: 1Ai.-something unique or special about the property"; "Deny: B.[V]. The variance will be harmful to the neighborhood or detrimental to the public welfare"; "3a. Merely a convenience to the applicant"; and "Application is approved with the change in the garage plan to 5′ side yards with Jim Blum's proposed drainage plan on the Mohling property only." *Id.* at *4. Though there was conflict between the statements indicating approval and those indicating denial, we found no illegality since the two dissenting votes on the panel of five explained the conflict. *Id.* In addition to written findings, we considered the relevant ordinance, the application, and testimony from a number of people. *Id.* at *3. While we said "[w]ith this information the Board could decide all three of the findings required of them," which could be read to imply that presentation of information to a board is sufficient to constitute "findings," the board did in fact make truncated written findings. *Id.* We do not therefore read *Condon Cabin* as standing for the proposition that mere presentation of information to a board alone suffices to satisfy the board's obligation to make findings. Because the board conducted a hearing on the issues on which it subsequently made written findings, we found the *Condon Cabin* board complied with the requirements of *Bontrager* and *Citizens*.

Second, in *A-Line Iron & Metals Inc. v. Cedar Rapids Bd. of Adjustment*, No. 10-0232, 2010 WL 4484399, at *3 (Iowa Ct. App. Nov. 10, 2010), we upheld the board's denial of a conditional use permit even though the written order "fail[ed] to include written findings of facts or conclusions of law." Finding the record

nevertheless sufficient "to enable a reviewing court to determine with reasonable certainty the factual basis and legal principles upon which the board acted," *Citizens*, 277 N.W.2d at 925, we held "the minutes of the meeting and the transcript from the meeting clearly show the Board denied the petition because the intended use of the property was not consistent with the use of nearby property, did not match the character of the neighborhood, and was not compatible with surrounding property." *A-Line*, 2010 WL 4484399 at *3. Most importantly, the meeting minutes in *A-Line* "nearly recite verbatim" a board member's statement emphasizing how the proposed use was out of character for the neighborhood:

> I would go to what I would call the three Cs. As I go back into the book here and look at the three Cs it was pointed out that I would just call them consistency, or consistent character, and compatible and as I look at this and as much as I would like to see a new business and new employees, I would say in my opinion we don't have consistency with the land use. We are out of character for the neighborhood and being out of character it lacks the compatibility that I would like see to be able . . . .

*Id.* at *2. After discussing the facts of *Bontrager*, our decision in *A-Line* almost wholly relied on the above statement in finding substantial compliance with the requirement of written findings. *See id.* at *3. In contrast, a review of the hearing transcript in the instant case reveals no statement rising to the same level of import. Thus, while *A-Line* and the instant case similarly lack "written findings of facts or conclusions of law," the *A-Line* board made at least one on-the-record comment synthesizing the merits of the application with the applicable standards.

Third, in *Wiebbecke v. Benton County Bd. of Supervisors*, No. 06-1672, 2008 WL 2746342, at *2 (Iowa Ct. App. July 16, 2008), we affirmed the district court's approval of a board decision denying a requested variance. The board in

that case issued no written findings. *Wiebbecke*, 2008 WL 2746342, at *2. While in finding substantial compliance we considered public comments, questions from the board, and the availability of minutes and a transcript—as the Board here argues should suffice for substantial compliance—we found that the minutes of the meeting stated a crucial reason for the denial of the requested variance. *Id.* at *1. The land in question had a corn suitability rating of eighty-five, and Benton County prohibited the granting of variances to land with ratings over seventy. *Id.* The result in *Wiebbecke* is thus easily distinguishable from the instant case because the *Wiebbecke* board's minutes stated a clear rationale for the denial of the variance. *See id.*

Relying on a statement in *Bontrager* that emphasized the Board's awareness of an applicable standard, the Board argues we have a sufficient basis for review since the board's approval of the CUP indicates by implication that the board found compliance with the relevant Story County ordinances. The Board argues "[t]he situation might be different if the Board of Adjustment denied the CUP application and did not indicate which factor weighed against the decision. However, in the situation where a Board of Adjustment approves an application, then it obviously found that all of the factors were met." We find this argument unavailing, as such an approach would apply different procedural requirements on the basis of whether a decision issued in the affirmative or the negative. The Board also argues "[t]he Court should avoid requirements that a Board of Adjustment fill out paperwork that essentially says 'We find factor 1 is met' and then have a detailed finding of fact addressing each argument." Our previous decisions make clear that we have not reviewed board decisions with "technical strictness."

*Thorson*, 90 N.W.2d at 735. But we cannot approve of a board decision completely without findings. To do so would increase "judicial usurpation of administrative functions" by forcing reviewing courts to review large records and make divinations about the boards' processes; assure less "careful administrative consideration" by allowing sophisticated advisor presentations to substitute for determinations by board members; and eviscerate a mechanism that safeguards jurisdictional boundaries. *See Citizens*, 277 N.W.2d at 925 (discussing the practical reasons for a requirement of administrative findings).

The Story County Code of Ordinances further supports the district court's decision. It requires that "[t]he Board of Adjustment shall establish a finding of facts based upon information contained in the application, the staff report, and the Commission recommendation and presented at the Commission or Board of Adjustment hearings." Story County, Iowa, Code of Ordinances § 90.03(3)(G)(1)(a). This language indicates that the finding of facts are to be not substituted by but based upon the information in the application, staff and Commission recommendations, and hearing testimony. Put another way, Story County Code stipulates that a staff report is not a substitute for the Board's findings. *See id.* In the county planner's presentation of the CUP application, she addressed the standards for approval set out in section 90.04. This process ensured that the Board would consider the affirmative criteria in subsection (1) and the health and safety dangers in subsection (2), thereby complying with the requirements of section 90.04. Yet this staff analysis of the review standards did not dispense with the Board's duty to "establish a finding of facts based upon information contained in . . . the staff report." *Id.* Nor did it dispense with the

Board's duty to substantially comply with a requirement of written findings of fact that would "enable [this] reviewing court to determine with reasonable certainty the factual basis and legal principles upon which the board acted." *Citizens*, 277 N.W.2d at 925. In short, it could not serve as a substitute for the Board's findings.

One board member offered something approximating a finding that the proposed use was highly desired in the Ames area but noted that the desirability of a proposed use is not one of the relevant criteria or grounds of review:

> I mean, there's no doubt, Ames can use this type of venue. And the—the fact that it's on almost 80 acres to me is a very high plus. The fact that it's—the residence and the lodging is going to be into the middle of the property is a plus. The fact that it's in a natural environment, there are people—I mean, there's—the type of venue they want to produce is a very needed thing in Story County . . . but . . . that's not our job to decide on those merits. We have to go into the compatibility and all that kind of stuff . . . .

Aside from that comment, which was explicitly qualified as outside of the scope of the Board's review, the Board also engaged in a lengthy discussion of the fire safety implications of the proposed development. Yet, the fire safety discussion did not include findings. Beyond these, the record reflects no reasoning or conclusions regarding the standards for approval set out in section 90.04.

We are ever mindful of the informal nature of such proceedings; however, the Board's complete lack of findings here does not allow a reviewing court to "determine with reasonable certainty the factual basis and legal principles upon which the board acted." *Citizens*, 277 N.W.2d at 925. The Board made no written or oral findings of fact; no board member affirmatively commented on the proposed exception's compliance or noncompliance with the relevant criteria; and no rationale for approval was offered, written or otherwise. It is not an excessively

technical requirement to demand that boards of adjustment offer reasoning for their decision, and we do not require a sophisticated synthesis of facts and law.

Because the Board's decision lacked substantial compliance with the written findings requirement of *Bontrager* and *Citizens* and lacked compliance with Story County ordinances, we affirm the district court's decision reversing and remanding for findings of fact.

**AFFIRMED.**