Alice RODINE, Robert P. Willis, and
Kenneth Bishop,
Plaintiffs–Appellants,

v.

ZONING BOARD OF ADJUSTMENT
OF POLK COUNTY, Iowa,
Defendant–Appellee.

No. 87–1042.

Court of Appeals of Iowa.

Oct. 20, 1988.

Philip T. Riley, of Isaacson, Clark, Bergman, & Hodge, P.C., Des Moines, for plaintiffs-appellants.

David W. Hibbard, Asst. County Atty., for defendant-appellee.

Heard by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

We are asked to address the issue of whether ex parte communications to members of defendant-appellee the Zoning Board of Adjustment of Polk County, Iowa, were so unfair an order should be entered annulling the action of the board. Before doing so we must determine whether the board's action is sufficient to raise a question of sufficient public import so the issue should be addressed even though the underlying controversy is now moot.

General Growth Properties sought from defendant board a variance and a special use permit to construct a private sewage treatment plant just north of the corporate limits of the City of Des Moines. The

variance and permit was granted July 15, 1985. On August 13, 1985, plaintiff-appellants Alice Rodine, Robert P. Willis, and Kenneth Bishop, filed a petition for writ of certiorari asking the board's decision be annulled and the case be remanded to be heard by a special board.

In early 1987 the property in question was annexed to the City of Des Moines. The Polk County zoning ordinance voids any variance and permit not acted upon by the applicant within six months of issuance. General Growth had not acted on the variance and permit within six months. The issue therefore is moot. *See Women Aware v. Reagen,* 331 N.W.2d 88, 92 (Iowa 1983); *State ex rel. Turner v. Buechele,* 236 N.W.2d 322, 324 (Iowa 1975).

Plaintiffs' action came before the district court on defendant's motion for summary judgment. For the purpose of the motion it was assumed by the court and the parties ex parte communications by interested parties had been made to the defendant board. The trial court determined the issue was moot and plaintiffs had not shown it would recur. The court granted defendant's motion for summary judgment and dismissed the case. Plaintiffs appeal contending (1) despite its mootness the issue should be addressed, and (2) ex parte communications by interested parties with members of county boards of adjustment should be prohibited. We reverse.

### I.

Generally courts will not consider an action if it no longer presents a justiciable controversy. *Iowa Freedom of Info. Council v. Wifvat,* 328 N.W.2d 920, 922 (Iowa 1983); *Hamilton v. City of Urbandale,* 291 N.W.2d 15, 17 (Iowa 1980). But claims should not be dismissed on mootness grounds where matters of public importance are presented and the problem is likely to recur. *City of Des Moines v. Public Employment Relations Board,* 275 N.W.2d 753, 758 (Iowa 1979). Moot questions might be considered when (1) they are of great public importance and (2) are likely to recur. *Rush v. Ray,* 332 N.W.2d 325, 326 (Iowa 1983); *City of Des Moines v.*

*Public Employment Relations Bd.,* 275 N.W.2d 753, 759 (Iowa 1979). The public or private nature of the question presented and the desirability of an authoritative adjudication for future guidance of public officials are ingredients of the first of the two prongs. *Rush* 332 N.W.2d at 326. We believe the question should be considered under the public interest exception. The public has a great interest in being assured boards of adjustment in this state will approach their duties in a fair and impartial manner. We also determine when we consider the number of such boards authorized in this state that a similar issue is likely to recur.

In making this determination we have sought guidance from a series of cases where moot issues have been addressed. *See Rush,* 332, N.W.2d at 326–27; *Hamilton,* 291 N.W.2d at 17; *Southeast Warren Comm. Sch. Dist v. Department of Public Instruction,* 285 N.W.2d 173, 178 (Iowa 1979); *City of Des Moines,* 275 N.W.2d at 759; *Burns v. Siebenmann,* 266 N.W.2d 11, 13 (Iowa 1978); *Iowa Civil Liberties Union v. Critelli,* 244 N.W.2d 564, 568 (Iowa 1976); *Catholic Charities of Archdiocese of Dubuque v. Zalesky,* 232 N.W.2d 539, 543 (Iowa 1975).

We have considered, too, cases where appeals were dismissed because they did not possess the requisite public interest. *See Dittmer v. Baker,* 280 N.W.2d 398, 400 (Iowa 1979); *State ex rel. Turner,* 236 N.W.2d at 324; *State v. Wilson,* 234 N.W. 2d 140, 141 (Iowa 1975).

We determine the issue should be addressed even though the underlying controversy is moot.

### II.

A county board of adjustment is provided for by statute. Iowa Code section 358A.10 (1987) provides in relevant part:

> The board or supervisors *shall* provide for the appointment of a board of adjustment, and, ... *shall* provide the said board of adjustment may, ... make special exceptions to the terms of the ordinances or regulations... (emphasis supplied).

Section 358A.15 defines the powers of the board and provides:

The board of adjustment shall have the following powers:

1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this chapter or of any ordinance adopted pursuant thereto.

2. To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance.

3. To authorize upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

The board of adjustment operates as a reviewing board and its functions are limited to administrative adjudications. An administrative proceeding is defined as:

An administrative adjudication is an agency proceeding that determines the legal rights of a particular person or persons based on individual facts or circumstances. ... an administrative ordinarily "involves a specifically named party and a determination of particularized legal issues and facts with respect to that party." ... adjudication "applies policy to a set of past actions and results in an order against (or in favor of) the named party.... The primary focus of adjudication is retrospective." Adjudication, therefore, is to be distinguished from rule making. Rulemaking is the process by which agencies issue statements of law or policy of *general* applicability, involving "general categories or classes of parties and facts and policies of general applicability." That is, "[r]ulemaking involves the formulation of a policy or interpretation which the agency will apply in the future to all persons engaged in the regulated activity." ... What distinguishes ... [rule-making] from adjudication is that the former affects the rights of individuals in the abstract and must be applied in a further proceeding before the legal position of any particular individual will be definitely touched by it; while adjudication operates concretely upon individuals in their individual capacity.

Bonfield, *The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act*, 63 Iowa L.Rev. 285, 287–88 (1977).

■ Adjudication is that agency process resembling the action of a court when it decides a typical case. The board in granting General Growth a permit and variance was exercising adjudicatory power. The board performs judicial functions within its narrow and specialized jurisdiction. *Jarrott v. Scrivener*, 225 F.Supp. 827, 833 (D.C.Cir.1964). In the performance of this adjudicatory function, the parties whose rights are involved are entitled to the same fairness, impartiality and independence of judgment as are expected in a court of law. *Id.* Although procedures and rules of evidence are less rigid in quasi-judicial bodies than in courts, there can be no difference under our concept of justice between the two tribunals in respect of these fundamental requirements. *Id.*

■ It has been suggested in a proceeding of this kind, because of its informality and the absence of many of the safeguards thrown around court proceedings, the rigid requirement that the trier be impartial and unconcerned in the result should be applied more strictly. *See Jarrott*, 225 F.Supp. at 833; *National Labor Relations Board v. Phelps*, 136 F.2d 562, 563 (5th Cir.1943). *See also Hot Shoppes, Inc. v. Clouser*, 231 F.Supp. 825, 832 (D.C.Cir.1964) (the court held zoning board deprived applicant of due process where inspection of premises was made and presented to the board and applicant did not know inspection had taken place and had no opportunity to question or refute the result).

The importance of bodies making administrative determinations avoiding ex parte communications has been emphasized by the inclusion in the Iowa Administrative

Procedures act of 17A.17[1] dealing with ex parte communications and separation of functions. While the act does not apply to county zoning boards, its provisions concerning communications are significant in the matter before us. *See Citizens, Etc., v. Pottawattamie Cty. Bd. of Adj.*, 277 N.W.2d 921, 924 (Iowa 1979). In view of the careful safeguards against ex parte communications set up in section 17A.17, we find it difficult to allow county boards of adjustment to engage in ex parte communications with interested parties.

We determine there are compelling considerations, including the basic considerations of fairness, which demand ex parte communications between members of county boards of adjustment who are exercising their adjudicatory functions and interested parties should not occur. The restrictions on county boards of adjustment should be no greater than those provided for under section 17A.17 for individuals assigned to render a proposed or final decision or to make findings of fact and conclusions of law in a contested case.

Plaintiffs ask that we prescribe an appropriate judicial remedy. That issue is not before us.

We conclude the trial court erred in dismissing the case for mootness.

Costs on appeal are taxed to defendant.

REVERSED.

DONIELSON, J., takes no part.

**1. Ex parte communications and separation of functions.**

1. Unless required for the disposition of ex parte matters specifically authorized by statute, individuals assigned to render a proposed or final decision or to make findings of fact and conclusions of law in a contested case, shall not communicate, directly or indirectly, in connection with any issue of fact or law in that contested case, with any person or party, except upon notice and opportunity for all parties to participate as shall be provided for by agency rules.

However, without such notice and opportunity for all parties to participate, individuals assigned to render a proposed or final decision or to make findings of fact and conclusions of law in a contested case may communicate with members of the agency, and may have the aid and advice of persons other than those with a personal interest in, or those engaged in prosecuting or advocating in, either the case under consideration or a pending factually related case involving the same parties.

2. Unless required for the disposition of ex parte matters specifically authorized by statute, parties or their representatives in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact or law in that contested case, with individuals assigned to render a proposed or final decision or to make findings of fact and conclusions of law in that contested case, except upon notice and opportunity for all parties to participate as shall be provided for by agency rules. The agency's rules may require the recipient of a prohibited communication to submit the communication if written or a summary of the communication if oral for inclusion in the record of the proceeding. As sanctions for violations, the rules may provide for a decision against a party who violates the rules; for censuring, suspending or revoking a privilege to practice before the agency; and for censuring, suspending or dismissing agency personnel.

3. No individual who participates in the making of any proposed or final decision in a contested case shall have prosecuted or advocated in connection with that case, the specific controversy underlying that case, or another pending factually related contested case, or pending factually related controversy that may culminate in a contested case, involving the same parties. Nor shall any such individual be subject to the authority, direction or discretion of any person who has prosecuted or advocated in connection with that contested case, the specific controversy underlying that contested case, or a pending factually related contested case or controversy, involving the same parties.

4. A party to a contested case proceeding may file a timely and sufficient affidavit asserting disqualification according to the provisions of subsection 3, or asserting personal bias of an individual participating in the making of any proposed or final decision in that case. The agency shall determine the matter as part of the record in the case. When an agency in these circumstances makes such a determination with respect to an agency member, that determination shall be subject to de novo judicial review in any subsequent review proceeding of the case.