Ellen GERINGER, Appellant,

v.

IOWA DEPARTMENT OF HUMAN SERVICES, Appellee.

No. 93–1019.

Supreme Court of Iowa.

Sept. 21, 1994.

Mitchell E. Turner of Fisher, Ehrhart, McCright & Turner, Cedar Rapids, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Mary K. Wickman, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

Ellen Geringer, the mother of Kelsey Geringer, appeals from a judgment upholding an adverse determination by the Iowa Department of Human Services (DHS) with respect to her efforts to have a child abuse report, which had been filed against her with regard to Kelsey, officially expunged from DHS's central registry. At the time of the abuse report, Kelsey was a few days more than one year of age. After reviewing the arguments presented, we affirm the judgment of the district court.

In September 1988, Dr. Richard Stevenson, a fellow in training in pediatrics at the University of Iowa Hospitals and Clinics, signed an affidavit alleging that Kelsey Geringer was a victim of Munchausen Syndrome by Proxy and that her mother, Ellen, the petitioner, was the perpetrator. Munchausen Syndrome by Proxy is a form of child abuse in which a parent repeatedly presents their child for unnecessary medical treat-

ments by simulating or producing symptoms in the child. In Kelsey's case, this diagnosis was based on a review of the mother's actions both before and after her child was brought to the University of Iowa Hospitals and Clinics from her home in Arizona for treatment.

Ellen and Kelsey were residents of Arizona. The motivation for selecting the Iowa facility as a treatment provider was its specially acclaimed program for weaning infants from tube feeding to oral feeding. Kelsey had experienced an unusually difficult birth as a result of her mother's involvement in an automobile accident approximately four months before the birth occurred.

Following her birth via induced labor on September 30, 1987, Kelsey was confined to the pediatric intensive care unit of a hospital in Phoenix, Arizona, for approximately a week. Thereafter, she continued to be evaluated and treated by specialists with respect to feeding problems, neurological delays, and suspected hearing loss. She experienced a failure to thrive. Prior to June 15, 1988, she received most of her caloric intake by gastrostomy tube feedings.

A June 15, 1988 medical evaluation in Arizona indicated that Kelsey was capable of taking on more oral nourishment, and her mother was encouraged to make more effort toward oral feedings. Staff notes from the Arizona medical facility indicate that Ellen was under much stress at this time and experiencing some problem in accepting the opinion of the Arizona medical care providers that, overall, Kelsey was not a sick child and had a very good prognosis. Counseling for Ellen was recommended.

Kelsey's evaluation and treatment at the University of Iowa Hospitals and Clinics commenced on September 19, 1988. Ellen expressed many concerns regarding Kelsey's health to the staff at that facility, many of which were unverifiable. These related primarily to unverifiable vomiting episodes and the alleged presence of blood in the disgorged matter.

On September 28, 1988, Dr. Stevenson completed an affidavit to be included in a child abuse report. It asserted that Kelsey was the victim of Munchausen Syndrome by Proxy as the result of Ellen's staging of baseless vomiting and bleeding incidents with respect to her daughter. The affidavit indicated that discussion with Kelsey's Arizona health care providers indicated that they too were strongly considering a diagnosis of Munchausen Syndrome by Proxy.

Dr. Stevenson's affidavit further concluded as follows:

I and the staff feel very strongly that there would be imminent danger to Kelsey's life or health if she were in the unsupervised care of her mother. We are therefore recommending that Kelsey be removed from the care of her mother and hospitalized at the University Hospital School for a more detailed and longer term of observation and evaluation. We feel that this evaluation would be most useful and productive if the mother would have no contact with Kelsey for at least one week. We recommend that any subsequent visits be strictly supervised and limited. We feel that prolonged separation from the mother with the child in the hospital is necessary to delineate what, if any, are Kelsey's true medical and developmental needs.

Dr. Stevenson took emergency custody of the child, and the Juvenile Court in Johnson County found that there was probable cause to support the emergency removal. In November 1988, the district court transferred the case to the Arizona Department of Economic Security because Arizona was the home state of the family.

Arizona juvenile authorities referred Kelsey's case to Dr. Peter Lusche, a physician and psychiatrist. Dr. Lusche, after reviewing Kelsey's medical records, concluded that there was insufficient evidence to find that Ellen had induced the medical symptoms of her child in order to receive medical attention. Based on that conclusion, he did not believe that a diagnosis of Munchausen Syndrome by Proxy was valid.

Dr. Lusche did conclude that the extraordinary anxiety and concern of Kelsey's mother likely exacerbated the already complex medical condition of her child, thus adding to the complex series of medical consultations, evaluations, and treatment which Kelsey had

received. He further concluded that a diagnosis of "Parent–Child Problem" or "Life Circumstance Problem" was more accurate than the Munchausen Syndrome by Proxy diagnosis of Dr. Stevenson.

The Arizona Juvenile Court accepted Dr. Lusche's report along with his testimony at a hearing. In his hearing testimony, Dr. Lusche explained his view on Munchausen Syndrome by Proxy by stating that, to be completely certain as to that matter, would require consultation with each of the several medical care providers involved in Kelsey's care over a period of more than one year. He acknowledged that he was not in a position to undertake such an extensive task. Following the hearing, the Arizona Juvenile Court returned the child to her mother's care.

Ellen initiated the present contested case proceeding pursuant to Iowa Code section 235A.19(2)(a) (1991) in an effort to require DHS to expunge the child abuse report from its central registry. A hearing was conducted before an administrative law judge. Dr. Stevenson testified at the hearing and stood by his original diagnosis. He conceded in his testimony, however, that many of his conclusions were premised on factual data as to which he did not have personal knowledge. He stated that the averment in his affidavit concerning the beliefs of Arizona medical providers had not been personally obtained by him, but, rather, by others on the staff of the Iowa hospital.

Prior to the issuance of the administrative law judge's proposed decision, Ellen and her husband, Larry Geringer, the father of Kelsey, filed an action in federal court against the State of Iowa, the University of Iowa, University of Iowa Hospitals and Clinics, Dr. Stevenson, and DHS. This lawsuit included claims of medical malpractice, tortious infliction of emotional distress, and invasion of privacy. Ten days after the filing of the federal action, the administrative law judge

issued a proposed decision, finding that the child abuse report against Ellen was, indeed, unfounded and should be expunged.

The director of DHS elected to review the proposed decision of the administrative law judge on motion of the agency as permitted by Iowa Code section 17A.15(3) (1991). Ellen objected to the director's decision to review the proposed ruling in a letter to the department. She contended in that letter that there was a conflict of interest under Iowa Code section 17A.17(3) because the agency was a party in the pending lawsuit. The director of DHS, without commenting on that contention, ultimately issued a final agency decision concluding that the suspected abuse was "undetermined" rather than "unfounded." [1]

The director's conclusion, unless reversed on judicial review, would mean that expungement of the report would occur one year after receipt. See Iowa Code § 235A.18(2). An administrative finding that the report was "unfounded" would require immediate expungement. Id.[2] By the time the administrative challenge had been determined at the highest agency level, however, more than a year had passed following the receipt of the abuse report. The result with respect to time of expungement would thus have been the same whether the administrative law judge's decision had been affirmed or revised.

A petition for judicial review was filed with the district court, contending that the final agency ruling was reached in violation of Iowa Code section 17A.17(3) and in violation of due process of law. In addition, Ellen claimed the decision was not supported by substantial evidence; was unreasonable, arbitrary, and capricious; and was characterized by an abuse of discretion. The case was remanded for the sole purpose of developing a record regarding the propriety of the review of the proposed decision. The district court ultimately rejected all of Ellen's con-

1. The "undetermined" label was chosen by the director as descriptive of the situation described in Iowa Code § 235A.18(2) as "child abuse information which cannot be determined by a preponderance of the evidence to be founded or unfounded."

2. We interpret this requirement to be triggered at the time of a final agency decision that an abuse report is unfounded. Although not at issue here, 441 Iowa Administrative Code 175.11(2) appears to deviate from this statutory requirement.

tentions. That court concluded that there was no violation of section 17A.17(3) and that there was no conflict of interest sufficient to warrant disqualification. This decision was reaffirmed in a ruling on a rule 179(b) motion filed by Ellen.

On this appeal, Ellen no longer contends that the administrative decision was not supported by substantial evidence. Her argument can be broken down into two parts. First, she argues the final ruling of the department was issued in violation of Iowa Code section 17A.17(3), which does not allow an agency to combine its adjudicative powers and its ability to advocate in related contested cases or controversies. Second, Ellen contends she was not given an impartial tribunal, as required by the Canons of Judicial Conduct and Iowa Code section 17A.17(4).

In her argument based on section 17A.17(3), Ellen maintains that the district court was incorrect in finding the agency had not advocated a particular position on the merits of the present dispute in connection with the pending civil damage action. She also urges that, by contesting the proposed ruling of the administrative law judge in an interagency memorandum, the agency was placing itself in an adverse relationship with Ellen.

Ellen's second argument is that an impartial tribunal was not provided in the appeal of the proposed ruling of the administrative law judge. She contends that the Canons of Judicial Conduct are applicable in this case and were violated. Canon 3(D) of the Canons of Judicial Conduct, Ellen argues, requires disqualification if a judge's impartiality might reasonably be questioned due to an interest that could be substantially affected by the outcome of the proceedings. Ellen urges that an "unfounded" child abuse report could be very detrimental to DHS's position in the pending litigation. She maintains that an actual showing of bias or prejudice is not necessary for a disqualification under the Judicial Canons.

I. *Alleged Violation of Section 17A.17(3).*

Section 17A.17(3) provides:

*No individual who participates in the making of any proposed or final decision in a contested case shall have prosecuted or advocated in connection with that case,* the specific controversy underlying that case, or *another pending factually related contested case,* or pending factually related controversy that may culminate in a contested case, *involving the same parties.* Nor shall any such individual be subject to the authority, direction or discretion of any person who has prosecuted or advocated in connection with that contested case, the specific controversy underlying that contested case, or a pending factually related contested case or controversy, involving the same parties.

Iowa Code § 17A.17(3) (emphasis added). We are unable to sustain Ellen's challenge to the director's decision-making role based on the requirements of this statute.

■ The issue with respect to section 17A.17(3) turns on the extent to which that statute disqualifies as a decision maker an "individual" who has advocated a position on a similar issue in a different proceeding. The individual who is the final decision maker at the agency level with regard to the present dispute was the director of DHS. The DHS has been organized by agency rule as required by Iowa Code section 17A.3(1). That rule, 441 Iowa Admin.Code 1.1, entrusts the director with the responsibility for "all operations of the department" and "the formulation of department policy within the limits set forth in the statutes of the State of Iowa." Although this administrative rule confers upon the director the role of final decision maker in contested cases decided by the agency under chapter 17A, there is nothing in the record to suggest that he would "advocate" on behalf of the department in the civil litigation commenced by Ellen and her husband.

■ Almost all agency heads are major policy makers in matters affecting their agencies, yet many are also empowered to act as final adjudicators on contested cases. For this system to be workable, the type of advocacy that works a disqualification upon an individual decision maker in a contested case proceeding, must, we believe, be a formal position on a similar issue, stated in

person, in another contested proceeding. An informal solicitation of a favored result in another proceeding does not meet this test. In this regard, we have recognized that, when presentation of an issue is done by outside counsel, there is no impermissible combination of adjudicative and advocacy functions. *Eaves v. Board of Medical Examiners,* 467 N.W.2d 234, 236–37 (Iowa 1991); *Wedergren v. Board of Directors,* 307 N.W.2d 12, 18 (Iowa 1981).

■ Ellen's argument that the interoffice memo that urged the director to review the proposed decision by the administrative law judge constituted improper advocacy is also without merit. In the present case, administrators in the agency subordinate to the director reviewed the proposed decision issued by the administrative law judge. Following that review, these persons recommended that the director review the decision on the agency's own motion as permitted by section 17A.15(3). In an interoffice memo recommending such action, the opinion was expressed that a finding of "undetermined" with respect to the challenged child abuse report would be more appropriate than the administrative law judge's finding of "unfounded."

We are convinced that it was within the contemplation of the legislature in permitting review of proposed contested case decisions on an agency's own motion, that the agency's determination of whether to undertake such review would in some instances turn on beliefs of affected agency officials concerning the merits of the proposed decision. This is particularly true as to issues directly affecting the mission and operation of the agency. The recommendation to the director in the present case is an example of that type of motivation. We do not find this to be a disqualifying factor. It is difficult to perceive how this could be avoided in light of the fact that agencies are to some extent policy making bodies.

## II. *Impartial Decision Maker.*

Ellen argues that the Canons of Judicial Conduct required disqualification because the department's conflicting interest caused its impartiality to be questionable. She also contends that the director of the department was personally biased in violation of Iowa Code section 17A.17(4).

The canon in question states:

*A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:*

. . . .

> d. *The judge* or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

. . . .

> (III) *Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding* [.]

Iowa Code of Judicial Conduct 3(D)(1)(d). We have, heretofore, not expressly determined the extent to which administrative agencies are held to the judicial conduct canons when exercising their powers in contested cases.

In *Anstey v. Iowa State Commerce Commission,* 292 N.W.2d 380, 390 (Iowa 1980), we suggested that agencies making decisions of great import should be guided by the rationale of the canons. The court of appeals has stated that parties in a contested case before an agency "are entitled to the same fairness, impartiality and independence of judgment as are expected in a court of law." *Rodine v. Zoning Bd. of Adjustment,* 434 N.W.2d 124, 126 (Iowa App.1988). We believe, however, that these observations must be tempered so as to harmonize with the dictates of the administrative process as established by the legislature.

■ In the present case, we need not determine what the result would be if the director of DHS had been personally included as a party in the civil litigation. He was not. For Ellen to succeed on her disqualification claim, we would be required to hold that the commencement of a civil lawsuit against an administrative agency, prior to exhaustion of administrative remedies as to a portion of that claim, will be allowed to block the ad-

ministrative decision process established by the legislature. We are unable to accept that premise. Accordingly, we refuse to find that Ellen's action in bringing the civil damage suit worked a disqualifying bias on the director under judicial conduct canons or the requirements of section 17A.17(4). We also find no denial of due process of law in the manner in which Ellen's claim was adjudicated by the agency.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**