# IN THE COURT OF APPEALS OF IOWA

No. 18-0155
Filed February 6, 2019

**LIME LOUNGE, LLC, and THUNDER & LIGHTNING, INC.,**
　　Plaintiffs-Appellants,

**vs.**

**ZONING BOARD OF ADJUSTMENT OF THE CITY OF DES MOINES, IOWA,**
　　Defendant-Appellee.
_____

　　Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.


　　Lime Lounge, LLC, and Thunder & Lightning, Inc., appeal the revocation of

the conditional use permit issued by the zoning board. **AFFIRMED.**



　　George Qualley IV and Cornelius S. Qualley of Qualley Law, PLC, Des

Moines, for appellants.

　　Luke M. DeSmet, Assistant City Attorney, Des Moines, for appellee.


　　Heard by Vogel, C.J., Vaitheswaran, J., and Danilson, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DANILSON, Senior Judge.**

Lime Lounge, LLC, and Thunder & Lightning, Inc. (hereinafter collectively "Lime Lounge") appeal the dismissal of their petition for certiorari issued by the district court in Lime Lounge's challenge to the revocation of the conditional use permit (CUP) issued by the Zoning Board of Adjustment of the City of Des Moines (Board). Lime Lounge raises numerous contentions that the Board's revocation of its CUP was procedurally flawed and illegal and that the district court's review was in error. We disagree and affirm.

**I. Background Facts and Proceedings.**

Lime Lounge operates a bar on East Grand Avenue in Des Moines, which is authorized to sell alcoholic beverages at that location pursuant to an August 31, 2011 CUP. Lime Lounge's original CUP provided:

> WHEREFORE, IT IS ORDERED that the appeal for a conditional use permit for a business selling wine, liquor, and/or beer, to allow use of the 42-foot by 39-foot (1638 square feet) building as a tavern with a 17-foot by 39-foot (663 square feet) patio to the west of the building, is granted subject [to] the following conditions:
> (1) Any business shall have a main entrance oriented toward either East Grand Avenue or East 5th Street.
> (2) Any business selling liquor, wine, and/or beer shall operate in accordance with a liquor license obtained through the Office of the City Clerk as approved by the city council.
> (3) The business shall comply with article IV of chapter 42 of the city code pertaining to noise control.
> (4) Live outdoor music on any patio shall be limited to non-amplified performances. Any outdoor sound or music on any patio shall be limited to levels that would be considered background auditory in nature.
> (5) Litter and trash receptacles shall be located at convenient locations inside and outside the premises, and operators of the business shall remove all trash and debris from the premises and adjoining public areas on a daily basis.
> (6) Any renovation of the building must be in compliance with current building codes with issuance of any necessary permits by the permit and development center.

(7) The conditional use permit shall be subject to further amendment or revocation if the zoning enforcement officer determines that the operation of the business becomes a nuisance or exhibits a pattern of violating the conditions set forth in the conditional use permit.

In July 2015, Lime Lounge received notice from the zoning enforcement officer that "the city has received numerous complaints regarding sound on the patio." The notice stated further:

Sound, above background in nature without a sound permit, is a violation of the [Board's] order granting a conditional use permit. We find the levels and disturbance to neighbors constitutes a nuisance. We find the use of outside speakers without a sound permit constitutes a pattern and practice of violating the terms and conditions of the [Board's] decision and order.

Lime Lounge was notified the Board would reconsider Lime Lounge's CUP at its August 26, 2015 meeting.

After a public hearing on August 26, 2015, the Board found:

The [Lime Lounge's] conditional use permit should be amended to expand condition #4 of the conditional use permit granted on August 24, 2011 (ZON2011-00142). It is reasonable to clarify this condition to state that any outdoor sound or music on the patio shall be limited to levels that would be considered background auditory in nature and shall be in accordance with a type "E" sound permit.

Granting the amended conditional use permit with conditions would be consistent with the intended spirit and purpose of the zoning ordinance and in harmony with the essential character of the neighborhood. This is an appropriate location for a tavern use, as it is located in the downtown area, which contains a mix of uses including taverns and restaurants. The impact of the tavern with an outdoor patio would be minimal so long as any outdoor sound or music on the patio shall be limited to levels that would be considered background auditory in nature and shall be in accordance with a type "E" sound permit. Furthermore, any noise generated by patrons using the patio must be kept to a level in compliance with article IV of chapter 42 of the city code pertaining to noise control. If the zoning enforcement officer determines at any time that the operation of the business again exhibits a pattern of violating the conditions set forth

in the conditional use permit, the zoning enforcement officer may apply to the Board to reconsider or revoke the conditional use permit.

Consistent with its findings, the Board amended Lime Lounge's CUP by written order on August 31, 2015:

> WHEREFORE, IT IS ORDERED that the conditional use permit granted on August 24, 2011 (ZON2015-00142) for a tavern selling wine, liquor, and/or beer, which allows use of the 42-foot by 39-foot (1638 square feet) building as a tavern with a 17-foot by 39-foot (663 square feet) patio to the west of the building for outdoor service, *where the zoning enforcement officer has determined that its operation has become a nuisance for surrounding residents and tenants, is amended*, as follows:
>
> . . . .
>
> (4) Live outdoor music on any patio shall be limited to non-amplified performances. Any outdoor sound or music on any patio shall be limited to levels that would be considered background auditory in nature and shall be in accordance with a type "E" sound permit.
>
> . . . .
>
> (7) The conditional use permit shall be subject to further amendment or revocation if the zoning enforcement officer determines that the operation of the business becomes a nuisance or exhibits a pattern of violating the conditions set forth in the conditional use permit.

(Emphasis added.)

On September 3, 2015, Lime Lounge was issued a type "E" permit.

On October 16, 2015, Lime Lounge received notice from the zoning enforcement officer that it was using speakers on the patio without the required sound permit and the Board would reconsider its CUP at its November 18th hearing.

At that November 18, 2015 hearing, the Board was informed that a type "E" permit had been issued to Lime Lounge. Consequently, the Board did not

reconsider the CUP. However, at the hearing Lime Lounge's landlord[1] stated in part,

> So first of all, we believe that regardless of whether they had issued a sound permit, the sound is still a problem. There's still complaints.
>
> At the very least, allowing outdoor amplified music should simply be disallowed with this conditional use permit. This is the request from the building owner.
>
> Additionally, I don't know if it's within your bounds today to address, but it appears that we have a problem with the sound emanating from inside the building to neighboring businesses. And, again, this is not a neighboring business that shares the same wall. There's a two-feet difference to allow dissipation of sound, and then it's got to go through that wall, and it is so loud it competes with their jukebox.
>
> I just talked with . . . the manager at the neighboring tavern, and it continues to be a problem, not on a daily basis, but on a regular basis.
>
> And we have no problem with the City of Des Moines enforcement staff or the Zoning Board taking action, whatever action you feel necessary, to nip this in the bud.
>
> At the very least, we support the City recommendation to eliminate the outdoor sound; however, I don't know what kind of sound system they have in there. I'm unfortunately not sure that this alone is going to take care of this matter, but we thought that it's important at this point. The landlord is tired of the complaints, tired of the appearances in front of Board.
>
> You've seen the attitude of the Applicant. He is adversarial with the landlord, and we want a tenant in there that respects its neighbor and gets along with everybody.
>
> Thank you.

Less than three months later the zoning enforcement officer took further action. On February 4, 2016, Lime Lounge received the following notice from the zoning enforcement officer:

> On August 24, 2011 the [Board] approved a conditional use permit for [Lime Lounge] to be used as a tavern/bar. The conditional use permit is subject to amendment or revocation if the zoning enforcement officer determines that the operation of the business becomes a nuisance.

---

[1] The tenant is actually Thunder & Lighting, Inc., doing business as Lime Lounge.

It has determined the sound emanating from the Lime Lounge and the patio constitutes a noise disturbance and prohibited pursuant to section 42-252 of the Municipal Code of the City of Des Moines. The noise disturbance creates a nuisance for surrounding business and people.

At times sound readings have shown the levels of sound measured at the property line have exceeded 65 dBA's as allowed by the type "E" permit. This is a violation of the type "E" permit issued pursuant to section 42-258(e) of the Municipal Code of the City of Des Moines.

Evidence of the nuisance was recorded by the Des Moines Police Department on May 9, 2015, June 5, 2015, October 22, 2015, November 19, 2015 and December 8, 2015. Staff receive[d] a complaint that on January 28 into the morning of January 29, 2016, the bass sound waves created air vibrations so annoying the occupants of a residential structure were forced to abandon their bedroom.

This matter will be presented to the [Board] for reconsideration of the conditional use permit on March 23, 2016.

At the March 23, 2016 Board meeting, after providing some background history, the zoning enforcement officer reported:

Des Moines Police Department was out again on 10/22 of '15 and they were at the complainant's address and the . . . police officer reports that when they pulled up, the bass from the sound, this is when they're outside the Lime Lounge, the bass from the sound system was so loud it vibrated my car windows and I could identify the song just by the bass alone, Get Low by Lil Jon.
. . . .
11/19 of '15 we have another police officer report . . . dispatched to the complainant's address. You have to realize the complainant lives down the alley above Jimmy John's so his back of the building is on that alley where the sound travels down through the alley. The officer said that he found that the vibration off the drywall was creating an audible noise disturbance that would affect a person of normal sensitivities. Instead of noise getting quieter, it gets louder. The complainant apparently had attempted, this is from the police report, to get a hold of [Lime Lounge representative] Mr. Qualley and the bartender at times to request that they turn the music down and they reported that they weren't going to cooperate with those requests to turn the music down.

The zoning enforcement officer also reported the manager of the Lime Lounge was

arrested on December 9, 2015, for disturbing the peace and for a noise

disturbance,[2] and then she reported sound readings taken by police at Lime Lounge on March 12, 2016, were in excess of sixty-five decibels. A March 12 police report reciting one officer's investigation of the noise level, stated in part,

> I was thirteen feet from the open door. From this location, I used the meter and obtained an LAS Max reading of 72.6 [decibels], an LZ Peak reading of 100.3 [decibels], and a LASeq reading of 69.5 [decibels].
> I then stood inside the open door of the business. From this location, I used the meter and obtained an LAS Max reading of 87.9 [decibels], an LZ Peak reading of 114.5 [decibels], and a LASeq reading of 85.4 [decibels]. These readings were all measured at a one-minute interval.

Lime Lounge's representative contended the Board had no jurisdiction over the matter, that there were specific procedures required to revoke its type "E" sound permit, that the allegations preceding the November 2015 Board meeting were res judicata, that the appropriate forum should be an administrative hearing based on a citation or criminal complaint. A board member asked, "Is your argument that this Board doesn't have the right to pull the conditional use permit that we granted?" Lime Lounge argued the "sole issue is the violation of the sound ordinance," which Lime Lounge asserted was to be dealt with in an administrative hearing per section 42-266 of the Municipal Code.

The Board was presented with exhibits, complaints and comments offered by neighbors[3] and police officers, and arguments by the parties. After the meeting, the Board voted to revoke Lime Lounge's CUP.

---

[2] The charges against the manager were dismissed by the magistrate judge on the ground that the city failed to present sound readings—in excess of the permitted level or otherwise.

[3] One neighbor reported he had been a complainant to the police, and because there had been no resolution of the noise problems he and his family were moving out of the neighborhood.

On March 31, 2016, Lime Lounge filed a petition for a writ of certiorari in the district court challenging the Board's revocation of its CUP. It asserted the Board's ruling was illegal in a myriad of ways and asserted various violations of regulatory procedure, erroneous statutory interpretation, and violations of the doctrines of res judicata and collateral estoppel. The district court found no illegality in the Board's action and annulled the writ, and Lime Lounge appeals.

## II. Standard of Review.

"Our review of a certiorari action is for correction of errors at law." *Burroughs v. City of Davenport Zoning Bd. of Adjustment*, 912 N.W.2d 473, 478 (Iowa 2018). "We are bound by the findings of the district court if they are supported by substantial evidence in the record." *Chrischilles v. Arnolds Park Zoning Bd. of Adjustment*, 505 N.W.2d 491, 493 (Iowa 1993). But, "[w]e are not bound by erroneous legal rulings that materially affect the court's decision." *Id.*

## III. Discussion.

Pursuant to Iowa Code section 414.15 (2016), any person aggrieved by any decision of the board of adjustment "within thirty days after the filing of" a decision of the board "may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality." *See Burroughs*, 912 N.W.2d at 479 (stating section 414.15 "clearly provides a deadline of 'thirty days after the filing of the decision in the office of the board'" to file certiorari action (citation omitted)). "Great deference is given to the board's authority in such contests." *Chrischilles*, 505 N.W.2d at 493.

Lime Lounge raises a number of issues.[4] The burden is on Lime Lounge to establish that the Board's revocation of its CUP was illegal. Illegality is established when the fact findings of the district court do not have substantial evidentiary support or when the board does not apply the proper law. *Amro v. Iowa Dist. Ct.*, 429 N.W.2d 135, 138 (Iowa 1988).

***A. Authority to revoke CUP.*** Lime Lounge asserts the Board lacked subject matter and personal jurisdiction over Lime Lounge and the revocation of its CUP. It argues that the power to revoke a liquor license does not lie with the board of adjustment and thus the revocation of its CUP, which effectively revoked its liquor license, is unlawful. Had the Board revoked a liquor license, Lime Lounge would have a stronger position.

Municipalities are permitted to "adopt ordinances or regulations for the location of . . . liquor control licensed establishments" and to adopt ordinances "governing any other activities or matters which may affect the retail sale and

---

[4] In its brief, Lime Lounge contends (1) the district court erred in finding it failed to preserve error of several issues at the Board level, (2) the Municipal Code is in conflict with state law and the Board has no power to revoke or modify CUPs, (3) the requirement to obtain a CUP as a condition precedent to the issuance of a liquor license is in conflict with state law, (4) the Board's procedures violated due process, (5) the Board lacks the power to take any action that would be a de facto revocation of its liquor license, (6) the Board lacks jurisdiction to consider violations of a sound permit under the law, (7) the district court's ruling in a case against the bar manager is res judicata and prohibited the Board from reaching a different conclusion on the same factual issues, (8) the Board was "collaterally estopped from considering the bulk of the evidence presented at the third meeting" discussing Lime Lounge, (9) the Municipal Code violates the equal protection clause of the state and federal constitutions, (10) the Board's action in revoking Lime Lounge's CUP was illegal and unreasonable, and (11) and the Board and the zoning officer acted with negligence, in bad faith, and with malice towards Lime Lounge.

In its reply brief, Lime Lounge also asserts it was denied a fair administrative hearing. The Board has moved to strike this claim, arguing an issue may not be raised for the first time in a reply brief. Our supreme court ordered this matter to be submitted with the appeal, and the appeal was then transferred to this court.

consumption of beer, wine, and alcoholic liquor and the health, welfare and morals of the community." Iowa Code § 123.39(2). And the legislature has granted to municipalities the authority to "suspend any retail wine or beer permit or liquor control license for a violation of any ordinance or regulation adopted by the local authority." *Id.*

The legislature has also granted to municipalities zoning authority. *TSB Holdings, L.L.C. v. Bd. of Adjustment for City of Iowa City*, 913 N.W.2d 1, 14 (Iowa 2018). A municipality has statutory authority to pass zoning laws "[f]or the purpose of promoting the health, safety, morals, or the general welfare of the community." Iowa Code § 414.1. "A zoning ordinance, including any amendments to it, carries a strong presumption of validity." *TSB Holdings*, 913 N.W.2d at 14 (citation omitted).

Pursuant to Iowa Code chapter 414, any city council exercising zoning authority is to create a board of adjustment. *See* Iowa Code § 414.7. The board of adjustment "may in appropriate cases and subject to appropriate conditions and safeguards make special exceptions to the terms of the ordinances in harmony with its general purpose and intent and in accordance with general or specific rules therein contained." *Id.* The code specifically provides to boards of adjustment the following powers:

> (1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this chapter or of any ordinance adopted pursuant thereto.
> (2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance.
> (3) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public

interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

*Id.* § 414.12.

Here, under its zoning authority, the city of Des Moines has determined "[t]he sale of alcoholic liquor, wine and beer is permitted only in" designated zoning districts and "subject to the conditions applicable to the business" as identified in a table. Municipal Code of the City of Des Moines, Iowa § 134-954(a) (hereinafter "Municipal Code"). In order to be permitted to sell liquor, taverns and night clubs must be located within certain zoning districts and must obtain a CUP from the board of adjustment. *Id.* Consequently, Lime Lounge is only permitted to sell alcoholic beverages at its present location because it obtained a CUP granted by the Board. *Id.* § 134-954(b).

The CUP by its very terms was subject to the permit holder's compliance with the conditions specified and "shall be subject to further amendment or revocation if the zoning enforcement officer determines that the operation of the business becomes a nuisance or exhibits a pattern of violating the conditions set forth in the conditional use permit." It would defy logic to conclude the "further amendment or revocation" was not within the Board's authority.

Here, the zoning enforcement officer did find Lime Lounge was operating in such a manner as to constitute a nuisance because of complaints and sound meter readings and sought review of Lime Lounge's CUP, which is authorized by the Municipal Code. *Id.* § 134-954(c)(6) ("If the zoning enforcement officer determines at any time that the operation of such a business exhibits a pattern of violating the

conditions set forth in the conditional use permit, the zoning enforcement officer may apply to the board to reconsider the issuance of the conditional use permit for such business."). The Board had the authority to review the CUP and the asserted violations under Iowa Code section 414.12(1) and (3).

**B. Conflicts with state law.** (a) Lime Lounge contends that only the state has the power to revoke its liquor license. Be that as it may, the Board did not revoke Lime Lounge's liquor license. The Board revoked Lime Lounge's CUP, a matter that was within the Board's authority.

(b) Lime Lounge next asserts requiring that a fee be paid to the city for the issuance of a CUP violates Iowa Code section 123.37(1). This claim was not made to the Board and is therefore not subject to our review. *See Bontrager Auto Serv., Inc. v. Iowa City Bd. of Adjustment*, 748 N.W.2d 483, 487 (Iowa 2008) ("A reviewing court will not entertain a new theory or a different claim not asserted on the board level." (citations omitted)).

**C. Due process.** Next, Lime Lounge asserts the Board's meeting procedures revoking or reconsidering its CUP violated due process. At the March 23, 2016 Board meeting at issue here, Lime Lounge asserted it had a due process right to have the sound violations addressed in the appropriate forum by way of an administrative hearing or a criminal proceeding. Specifically, Lime Lounge contended it should be afforded the right to cross-examine witnesses. Lime Lounge contended the "sole issue" before the Board at the meeting was the "sound permit" and that attempting to determine the issue at the board level was improper. We determine Lime Lounge has preserved its claim of a violation of due process related to its claim of a right to cross-examine witnesses and object to evidence.

While we do not disagree that the Municipal Code provides for procedures for revoking a sound permit[5] and alternative methods for prosecuting specific alleged violations of the noise ordinances by a person,[6] the question before the Board on March 23, 2016, was whether Lime Lounge was complying with the conditions of its CUP. We are not convinced the Board's authority to determine whether Lime Lounge was complying with its CUP was governed or precluded by the separate questions of a possible revocation of a sound permit, municipal infraction, or criminal violations for noise disturbances. Lime Lounge provides no authority, and we have found none, that requires proof of any such facts before a CUP is revoked.

Lime Lounge contends it was "entitled to the same level of fairness as in a court of law." Relying on *Rodine v. Zoning Board of Adjustment of Polk* County, 434 N.W.2d 124, 126 (Iowa Ct. App. 1988), Lime Lounge argues it should have been afforded the right to cross-examine witnesses and the right to object to evidence. Lime Lounge reads too much into *Rodine*.

We acknowledge the Board performs judicial functions within its specialized jurisdiction. *See Rodine*, 434 N.W.2d at 126. And, in the performance of this adjudicatory function, the parties whose rights are involved "are entitled to the same fairness, impartiality and independence of judgment as are expected in a

---

[5] *See* Municipal Code §§ 42-265, -266.

[6] The Municipal Code provides, "No person shall make, continue or cause to be made or continued any noise disturbance as defined in this article." Municipal Code § 42-252. "Any person . . . who commits an act prohibited by the provisions of this article, shall be guilty of a simple misdemeanor or a municipal infraction punishable by a criminal or a civil penalty as provided by section 1-15." *Id.* 42-268.

court of law." *Id.* Yet, the procedures and rules of evidence are less rigid in quasi-judicial bodies than in courts. *Id.*

The question before this court is whether Lime Lounge was afforded a meaningful opportunity to be heard under the three-pronged *Mathews* test.[7]  *See Weizberg v. City of Des Moines*, ___ N.W.2d ___, ____, 2018 WL 4178518, at *9 (Iowa 2018).  We must (1) consider whether the plaintiff has asserted a constitutional interest entitled to procedural due process protection, (2) evaluate the risk of erroneous deprivation that may arise from the offered procedure, and (3) evaluate the nature of government's interest.  *Id.*  The Board does not contest Lime Lounge's claim of a property right by virtue of the CUP.  The parties differ, however, as to what process is due.

Lime Lounge's right to use its property to sell alcoholic beverages was subject to compliance with several conditions, including compliance with article IV of chapter 42 of the Municipal Code.  *See* Municipal Code § 134-954(b), (c).  The purpose of article IV of chapter 42—entitled "Noise Control"—is "to establish standards for the control of excessive noise in the city by setting maximum permissible sound levels for various activities to protect the public health, safety and general welfare."  *Id.* § 42-249.  The purpose is in accord with the city's policy

> to promote an environment free from excessive noise, which unnecessarily jeopardizes the health and welfare and degrades the quality of the lives of the residents of this community, without unduly prohibiting, limiting or otherwise regulating the function of certain

---

[7] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), provides the court is to consider: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

noise-producing equipment which is not amenable to such controls and yet is essential to the economy and quality of life of the community.

*Id.* § 42-248(5). The health, safety, and quality of the lives of the city's residents are important interests, which the city has recognized are to be balanced with a business's right to function without excessive regulation.

On February 4, 2016, Lime Lounge was provided notice by the zoning enforcement officer that it was not in compliance with its CUP. This notice came after Lime Lounge had its CUP modified and was specifically notified future noncompliance could result in the revocation of its CUP.

Lime Lounge was afforded a public hearing on March 23, 2016, and was permitted to present opposition witnesses to the zoning enforcement officer's recommendation. Counsel also appeared and argued the merits of the evidence presented to the Board.

The zoning enforcement officer offered evidence of a number of complaints related to noise from neighbors from as far as a block away. Complainants and police officers investigating noise complaints offered statements to the Board. Lime Lounge's representative acknowledged that there had been complaints but asserted the complaints were not legitimate. The representative advocated for Lime Lounge's right to emit sounds of a certain decibel level even if neighbors would be affected, and he asserted the district court had concluded the authorized levels had not been exceeded.[8] The Board considered evidence to the contrary and other factors and issued a finding that Lime Lounge was not entitled to a CUP.

---

[8] The Lime Lounge manager, Michelle Yarger, was arrested for a noise disturbance and disturbing the peace, which are misdemeanors. *See* Municipal Code § 42.252 ("No

Lime Lounge was also afforded the right to challenge the Board's findings by its certiorari action. *See Bontrager*, 748 N.W.2d at 496. In the certiorari hearing, the action is tried de novo and the court may accept additional evidence if necessary for a proper disposition.[9] Iowa Code § 414.18. We conclude under this legislative scheme, procedural due process did not require a formal evidentiary hearing that included cross-examination of the proponents before the Board. *See Montgomery v. Bremer Cty. Bd. of Supervisors*, 299 N.W.2d 687, 693-94 (Iowa 1980) (concluding due process for public hearing did not require a formal evidentiary hearing). We find no denial of Lime Lounge's due process rights.

***D. The revocation of its CUP is not equivalent to revocation of its liquor license.*** Lime Lounge asserts the revocation of its CUP is a de facto revocation of its liquor license. We are not convinced of this premise. We acknowledge the revocation of the CUP may lead to various repercussions, but the sole issue before the Board was whether Lime Lounge had complied with the conditions of the use permit and if it should be revoked. Thus, we do not address the claim that the Board is without power to revoke a liquor license.

***E. Board did not consider violations of a sound permit.*** Lime Lounge next asserts the Board lacked jurisdiction to consider violations of a sound permit

---

person shall make, continue or cause to be made or continued any noise disturbance as defined in this article."). Section 42.246 defines "noise disturbance" and provides several alternative means of causing a noise disturbance. The court deciding the criminal case accepted Yarger's assertion that without a sound reading in excess of sixty-five decibels the city could show no violation and dismissed the charges. *See* Municipal Code § 42.246, "Noise Disturbance" alternative "4." While we may disagree with that court's reading of the ordinance at issue, the matter is not before us.

[9] "De novo" under the county zoning scheme simply means additional evidence may be accepted for proper disposition. *See Buchholz v. Bd. of Adjustment of Bremer Cty.*, 199 N.W.2d 73, 78 (Iowa 1972).

and the Board failed to follow administrative procedures to revoke a sound permit. This contention is based upon its claim before the Board that the "sole issue" at the March 23 Board meeting was its sound permit.

We acknowledge there are specific procedures provided to revoke a sound permit. *See* Municipal Code § 42-265, -266. But the issue before the Board was not a revocation of Lime Lounge's sound permit but the revocation of its CUP. The sound permit only authorized exterior sound equipment not exceeding sixty-five decibels and did not authorize an excessive noise level emitting from the inside of the building—as much of the evidence reflected. We find that while there may be intersecting questions involved in the revocation of a sound permit in an administrative proceeding and reconsideration of a CUP, the Board had authority under the CUP provisions themselves to amend or revoke the CUP for noncompliance with its terms.

***F. The district court's ruling in a criminal matter was not res judicata of the issue before the Board.*** Lime Lounge contended before the Board that the issue of a noise disturbance was res judicata arguing, "The first officer, that entire testimony was presented in front of a district court judge and that has been adjudicated." This statement is not factually correct. One of the two officers who presented statements at the March 23, 2016 Board meeting had been called in the criminal case on a preliminary matter of the city's sound equipment. As noted in a footnote above, the Lime Lounge's manager was charged with disturbing the

peace and causing or maintaining a noise disturbance. The criminal charge was dismissed before any evidence at trial was offered.[10]

"The doctrine of res judicata embraces the concepts of claim preclusion and issue preclusion." *Spiker v. Spiker*, 708 N.W.2d 347, 353 (Iowa 2006). "[I]ssue preclusion requires the issue to have been actually litigated." *Id.* As for claim preclusion, Lime Lounge, as the party seeking to invoke the doctrine, must establish three elements: (1) the parties in the first and second action were the same: (2) the precluded claim could have been fully and fairly adjudicated in the prior case; and (3) there was a final judgment on the merits in the first action. *See id.*

We disagree with Lime Lounge that the magistrate's legal conclusion in that criminal adjudication bound the Board on any issue involved in the Board's reconsideration of Lime Lounge's CUP. Lime Lounge's compliance with its CUP was not litigated in the criminal case and thus there can be no issue preclusion. *See id.* And Lime Lounge has not established the three elements required for claim preclusion. The Board was not a party to the criminal action so we do not have the same parties. There was no final adjudication on the merits of the whether the manager was guilty of a noise disturbance because the case was dismissed prior to trial. Lime Lounge's compliance with its CUP was not at issue.

---

[10] The magistrate stated, "[T]here's no evidence that's going to be submitted that the decibel level exceeded this particular decibel or this threshold, and we've got a special use permit that allows this particular business to put out sound up to sixty-five decibels." The magistrate also noted, "I could be wrong. And since this is a . . . pretrial motion to dismiss, you know, maybe I could be appealed."

Rather, the question was whether the bar manager was criminally responsible for a noise disturbance.

We do not agree with Lime Lounge that the Board was precluded from considering complaints that had previously been brought to its attention. At the August 26, 2015 Board meeting, the Board reconsidered Lime Lounge's CUP and concluded it should be amended (not revoked). The Board specifically found "the business has constituted a nuisance for surrounding residents and businesses." On August 31, 2015, Lime Lounge's CUP was modified after the zoning enforcement officer "determined that its operation has become a nuisance for surrounding residents and tenants." The amended CUP provides:

> WHEREFORE, IT IS ORDERED that the conditional use permit granted on August 24, 2011 (ZON2015-00142) for a tavern selling wine, liquor, and/or beer, which allows use of the 42-foot by 39-foot (1638 square feet) building as a tavern with a 17-foot by 39-foot (663 square feet) patio to the west of the building for outdoor service, where the zoning enforcement officer has determined that its operation has become a nuisance for surrounding residents and tenants, is amended, as follows:
>     . . . .
>     (4) Live outdoor music on any patio shall be limited to non-amplified performances. Any outdoor sound or music on any patio shall be limited to levels that would be considered background auditory in nature and shall be in accordance with a type "E" sound permit.
>     . . . .
>     (7) The conditional use permit shall be subject to further amendment or revocation if the zoning enforcement officer determines that the operation of the business becomes a nuisance or exhibits a pattern of violating the conditions set forth in the conditional use permit.

Lime Lounge did not appeal this action by the Board and thus any matters inhering in the amended CUP are not subject to challenge here. *See Burroughs*, 912 N.W.2d at 478 (noting thirty-day deadline for filing a certiorari action).

Because Lime Lounge was notified its operation had been determined to be a nuisance in the past and that its CUP "shall be subject to further amendment or revocation" if "the operation of the business becomes a nuisance or exhibits a pattern of violating the conditions set forth in the [CUP]," we determine the Board could reasonably consider prior complaints in the question of whether Lime Lounge's operation was "exhibit[ing] a pattern of violating the conditions set forth."

**G. Lime Lounge's equal-protection claim was not raised below.** Lime Lounge asserts the city's scheme under the Municipal Code where only certain entities are required to obtain a CUP violates the Equal Protection clauses of the state and federal constitutions. This claim was not raised before the Board and we do not consider it on appeal. *See Bontrager*, 748 N.W.2d at 487.

**H. The Board's ruling was not illegal or otherwise unreasonable.** The Board ruled:

> At this time, the Board finds that the zoning enforcement officer had adequate justification for bringing the conditional use permit back to the Board for amendment or revocation. The testimony received during the public hearing, the pattern of past noise complaints, and the past sound meter readings taken by the Des Moines Police Department clearly demonstrate that the business does not satisfy the criteria necessary for having a conditional use permit. The location, design, construction and operation of the business does not adequately safeguard the health, safety and general welfare of persons residing in the adjoining and surrounding residential area. The business is not sufficiently separated from the adjoining area and surrounding residential uses by distance, landscaping, walls or structures to prevent any noise, vibration or light generated by the business from having a significant detrimental impact upon the adjoining residential use. Furthermore, the business has constituted a nuisance for surrounding residents and businesses. Therefore, the conditional use permit shall be revoked.

We must determine whether Lime Lounge has met its burden to show the Board's action was illegal or unsupported by substantial evidence. *See id.* at 495; *City of Cedar Rapids v. Mun. Fire & Police Ret. Sys.*, 526 N.W.2d 284, 287 (Iowa 1995). "Evidence is substantial 'when a reasonable mind could accept it as adequate to reach the same findings.'" *City of Cedar Rapids*, 526 N.W.2d at 287 (Iowa 1995) (citation omitted). The Board is permitted to rely on anecdotal evidence, including the neighbor who reported the sound from Lime Lounge rattled the drywall of his apartment. *See Bontrager*, 748 N.W.2d at 496. "In addition, the Board may rely on commonsense inferences drawn from evidence relating to other issues, such as use and enjoyment, crime, safety, welfare, and aesthetics," to make its findings. *Id.*

The Municipal Code defines "noise" as "any sound which disturbs humans or which causes or tends to cause an adverse psychological or physiological effect on humans." Municipal Code § 42-246. The code provides further, "No person shall make, continue or cause to be made or continued any noise disturbance as defined in this article." *Id.* § 42-252.

A "noise disturbance" means:

> (1) Any sound[ ] which unreasonably endangers or injures the health or safety or welfare of a human being; or
> (2) Any sound which unreasonably disturbs a person of normal sensitivities; or
> (3) Any sound which unreasonably devalues or injures personal or real property; or
> (4) Any sound which is in excess of decibel levels set forth in this article.

*Id.* § 42-246.

Moreover, the Municipal Code provides several factors "which may be considered in determining whether a noise disturbance exists":

> (a) The level of the noise;
> (b) The level and intensity of any background noise;
> (c) Whether the nature of the noise is usual or unusual;
> (d) Whether the origin of the noise is natural or unnatural;
> (e) The proximity of the source of the noise to sleeping facilities;
> (f) The land use, nature and zoning of the area from which the noise emanates and of the area where the noise is received;
> (g) The time of day or night when the noise occurs;
> (h) The duration of the noise;
> (i) Whether the noise is recurrent, intermittent or constant.

Id. § 42-246(5). The list is not exclusive.

Here, the evidence included many noise complaints and several meter readings, several in excess of eighty-five decibels. Clearly, the sound emitting from the Lime Lounge was unreasonably disturbing individuals and other businesses in the area. A city authorized sound permit did not authorize unlimited noise emitting from the premises. Having reviewed the record, we find there is substantial evidence from which the Board could make its findings.

In conclusion, we have considered the issues raised by Lime Lounge and find them to be without merit or not properly raised. We affirm the district court.

**AFFIRMED.**